IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

TIMOTHY BARNARD,

    Plaintiff,

v.                                                                Civil Action No. **3:07CV566**

**PIEDMONT REGIONAL JAIL AUTHORITY,** *et al.*,

    Defendants.

## MEMORANDUM OPINION

Plaintiff Timothy Barnard, a Virginia inmate currently incarcerated at Powhatan Correctional Center, brings this action under 42 U.S.C. § 1983, alleging that Andrew Johnson, James Davis, Michael Jackson, and Clarence Whitehead (the "Defendants") violated his Eighth Amendment[1] rights by subjecting him to physical assaults while he was incarcerated at the Piedmont Regional Jail (the "Jail") in Farmville, Virginia. On November 14, 2009, the Court entered default judgment as to Defendant Johnson. On January 8, 2009, the Court referred this matter to the Magistrate Judge for further proceedings. An evidentiary hearing was held, and on July 17, 2009, the Magistrate Judge filed an amended Report and Recommendation addressing issues of liability and proposing findings of fact relevant to damages. This matter is ripe for decision.

---

[1] "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.

# I. THE MAGISTRATE'S REPORT AND RECOMMENDATION

The Magistrate Judge recommended the following findings of fact:

### A. Disturbance at the Jail and Subsequent Assault on Plaintiff

Around 11:30 p.m. on September 20, 2005, corrections officers at the Jail instructed inmates to retire to their bunks. Inmates Matthews and Seck were watching television in the "pod." Defendant Davis turned off the television, pursuant to Jail procedure. Matthews, however, turned it back on. Davis then removed the television and a microwave from the pod. In response, inmates began throwing trash and debris. In the course of the disturbance, inmates overturned a mop bucket and trash can, and flipped the television to the floor.

Johnson and other staff members came into the pod and removed all of the inmates from the floor into D-housing unit, except for Barnard, Seck, and Matthews. Jackson took Barnard, Seck, and Matthews to the "sally port," a secure hallway between the command center and recreational area that is not monitored by surveillance cameras. The guards intended to question these three inmates about the disturbance, which had dissipated by this time. Officers Whitehead, Jackson, Davis, Johnson, Merritt, and Williams were all present in the sally port.[2] They formed a half-circle around the three inmates, interrogating them harshly about the trash and debris littering the pod. Barnard and Seck denied knowing who had thrown trash during the disturbance. Matthews admitted to turning the television back on after Davis had turned it off. Jackson grabbed Barnard by the front of his jumper and slammed him into the wall.

The evidence indicated that Christopher Williams (no longer a defendant here) punched Barnard in the head, causing him to fall to the ground. The six corrections officers present in the sally port repeatedly hit and kicked Mr. Barnard. The officers then threw Seck on top of Barnard and assaulted Seck in the same way. Inmate Matthews was still in the sally port at this time, but was not assaulted.

Johnson picked up Seck off the floor, and Jackson picked up Barnard. Barnard and Matthews were then escorted out of the room. They stood outside the doorway to the sally port while the officers continued to press Seck for more information about who threw the trash during the disturbance. While he stood outside the closed door, Barnard heard the officers beating Seck, who was screaming. Twenty or thirty seconds later, Davis took Seck away to the "M-pod."[3] Jackson pointed to Barnard, indicating that he was next. Davis returned from escorting Seck to M-pod, and brought Barnard back into the sally port. Johnson pulled out his metal

---

[2] Both Williams and Merritt testified that they had been working in the central control tower during the disturbance, but were relieved of that duty and directed to the sally port.

[3] "M-pod" apparently refers to the isolation and segregation unit of the Jail.

baton and stated to Barnard, "Do you see this [expletive]? You two are going to get real acquainted if you don't start talking."

Johnson grabbed Barnard by the front of his jumper and threw him against the wall. Johnson used his metal baton to strike Barnard on the top of the head and slammed him to the wall once more. Barnard fell to the floor and curled into a ball on his left side. Johnson, Jackson, Davis, Whitehead, Merritt, and Williams all participated in hitting, stomping, and kicking Barnard, occasionally bracing themselves on the wall for leverage. Jackson delivered a forceful blow with his foot that likely caused Barnard's rib to break. During the incident, no officer intervened or otherwise attempted to stop the physical interaction.

The officers then took Barnard to M-pod and placed him in a cell with Seck. When he asked Jackson for a medical form the following night, Jackson told Barnard to "keep [his] mouth shut, or [he] would [experience physical retaliation] again." X-rays taken at University of Virginia Department of Radiology on October 26, 2005, revealed that Barnard had suffered a fractured eighth rib.

### B. Jail's Investigation of Plaintiff's Grievance

Ernest Toney was a major at the Jail at the time of the incident, and is now the Superintendent of the Jail. Superintendent Toney conducted an investigation in response to a grievance filed by Barnard regarding the September 30, 2005 incident. The investigation occurred in early November 2005. He spoke to Barnard, Seck, and Matthews, as well as each of the corrections officers involved.

Superintendent Toney spoke with Sergeant Johnson twice. During the first interview with Johnson, Johnson denied that the officers hit anyone.[4] The other officers' accounts of the incident discredited Johnson's assertion. Davis told Superintendent Toney that "it got kind of rough" in the sally port, and that all the officers were involved in using force, but that Williams "went a little overboard" in hitting him. Jackson also admitted to Superintendent Toney that all of the officers present hit Barnard and Seck that night. Jackson advised that he thought Williams and Johnson had gone too far in the amount of force used. Merritt told Superintendent Toney that Williams slammed Barnard to the floor, then everyone hit Seck and Barnard. Merritt also admitted that all of the officers hit Barnard and Seck. Superintendent Toney's interviews with Williams and Whitehead confirmed these details.

Barnard, Seck, and Matthews provided accounts of the incident consistent with those above when Superintendent Toney interviewed them. Matthews suffered no physical injuries. He had admitted that he had turned the television back on after Davis turned it off. Matthews advised Toney that while he could see Seck being struck, he could only hear the guards attack Barnard. Seck's version of events

---

[4] Johnson had instructed Williams and Whitehead to lie if asked about the incident and to say that nothing had happened.

corroborated Barnard's and Matthews's descriptions, with the addition that, after the incident, "Barnard told me to keep my mouth shut or we might get beaten again."

On November 2, 2005, Superintendent Toney again spoke with Sergeant Johnson. During this second interview, Toney advised Johnson of the findings of the investigation. Johnson took full responsibility for the incident, stating that he should have handled the situation differently. Johnson then resigned, handed in his badge and ID, and was escorted from the Jail.[5]

A November 4, 2005 report from Toney's supervisor, Major Pugh, who had referred the investigation to Toney, made disciplinary recommendations in response to Barnard's allegations. This report was entered into evidence as Plaintiff's Exhibit 2. It shows that the Jail decided that Johnson should be terminated, both because he was responsible for the shift during which the incident occurred, and because he attempted to coerce Williams and Whitehead into lying about the incident. The report recommended written reprimands for Whitehead, Williams, Davis, Jackson, and Merritt. Superintendent Toney explained that the lower-level officers received reprimands rather than termination because they were relatively new employees and had been following the directions of a veteran supervisor, Sergeant Johnson.

### C. Extent and Nature of Plaintiff's Injuries

Plaintiff filed medical request forms on November 11 and 23, and December 7, 2005, seeking pain medication for his broken rib. On January 11, 2006, Barnard filed another medical request form, advising that he was suffering dizzy spells which he believed might be related to the assault by Johnson with the baton. Plaintiff testified that following the incident, he had a four- to five-inch welt on the top of his head, but that the pain from his broken rib "blocked the pain from [his] head" because it hurt to breathe. He had to stop exercising for four to six weeks after the incident, and had trouble sleeping because of the rib pain. Barnard testified that his ribs did not feel normal again until January 2006, approximately three months after the incident.

During the incident, all of the Defendant Officers were on duty and in uniform. Plaintiff testified that, emotionally, he lost respect for prison officers and guards as a result of the incident, and no longer expects them to be concerned about protecting him from other inmates or other guards.

### D. Defendants' Lack of Justification for Force Used

The evidence presented at the hearing overwhelmingly indicated that Barnard had done nothing to justify the level of force used against him by Defendants. Barnard himself testified that, in the sally port, he "made it a point to keep [his] arms crossed and actually stare at the floor, to look the least bit intimidating as possible." He never cursed or threatened the Defendants. He never lunged at any corrections

---

[5] Superintendent Toney testified that Johnson would have been fired had he not resigned.

> officer. He has consistently contended that all he did was deny that he had done anything to contribute to the disturbance.
>
> Officer Merritt testified that he did not see Barnard do anything to deserve being struck, nor did he see Barnard contribute to the disturbance that precipitated the beating. Officer Williams testified that Barnard was not pushing anybody in the sally port, but Sergeant Johnson "put his hands on Barnard in a bad way," knocking him to the ground to be "restrained" by the rest of the Defendants. Superintendent Toney's investigation yielded no evidence of wrongdoing by Barnard, and in fact substantiated Barnard's grievance that the Defendants used excessive force against him. In court, it was evident that Barnard was approximately the same size as one Defendant, and smaller than the others.

(July 17, 2009 Am. Report and Recommendation. 2-7) The Magistrate Judge then proposed the following conclusions of law:

1. **Standard for Imposing Liability for Excessive Force**
   Section 1983 "is not itself a source of substantive rights," but instead is "a method for vindicating federal rights elsewhere conferred." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979). Plaintiff claims that the Defendants' attacks "were willfully, wantonly, and maliciously employed to inflict pain on Mr. Barnard," in violation of his Eighth Amendment right to be free from cruel and unusual punishment.[6] (Compl. ¶ 53-54.)
   In the context of an excessive force claim under the Eighth Amendment, a court must consider "'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986) (*quoting Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)). To succeed on such a claim, a prisoner must establish two requirements. *Stanley v. Hejirika*, 134 F.3d 629, 633-35 (4th Cir. 1998). First, the prisoner "must satisfy a subjective requirement that the force used by the corrections officers 'inflicted unnecessary and wanton pain and suffering.'" *Id.* at 634 (*quoting Hudson v. McMillian*, 503 U.S. 1, 6 (1992)). Second, the prisoner must also make an objective showing "that correctional officers' actions, taken contextually, were 'objectively harmful enough' to offend 'contemporary standards of decency.'" *Id.* (*quoting Hudson*, 503 U.S. at 8). Barnard succeeds on both prongs.
   Subjectively, the Court finds that the Defendants inflicted unnecessary and wanton pain and suffering on Barnard. By all accounts, Barnard simply denied wrongdoing as to the disturbance at the Jail, and did nothing to instigate or otherwise warrant the subsequent beatings to which Defendants subjected him. Indeed, the

---

[6] *See Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984) ("The unjustified striking or beating of a prisoner by police or correctional officials constitutes cruel and unusual punishment which is actionable under 42 U.S.C. § 1983.").

disturbance had quelled before any questioning began, so no disciplinary exigency continued to exist. The fact that Defendants subjected Barnard to a second round of excessive force demonstrates wantonness. Johnson's use of the metal baton on Barnard's head and the number of guards involved demonstrates wantonness as well.

Objectively, the Defendants' actions offend contemporary standards of decency. *See Hudson*, 503 U.S. at 9 ("When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated. This is true whether or not significant injury is evident.") (citation omitted); *see also Romaine v. Rawson*, 140 F. Supp. 2d 204, 213 (N.D.N.Y. 2001) ("[W]hen . . . all parties admit that no amount of force was needed to maintain discipline and security within the prison, guards cannot physically assault prisoners simply because they are angry at them."). Barnard suffered painful injuries through repeated use of force by Defendants. That the incident occurred in an area lacking cameras suggests ill intent *ab initio*. The evidence showing that the Jail would have fired Johnson absent his resignation confirms that these actions contravened contemporary standards of decency for corrections officers.

Accordingly, the Court RECOMMENDS that judgment be entered in favor of Plaintiff on his § 1983 claim against all Defendants.

### 2. Joint and Several Liability

"In order for an individual to be liable under § 1983, it must be 'affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights.'" *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985) (*quoting Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977)). Such personal involvement in an excessive force claim can be established by showing either: (1) direct participation in the assault by the defendant, or, (2) the defendant was present during the assault, yet failed to intercede on behalf of the victim even though he had a reasonable opportunity to do so. *Jeffreys v. Rossi*, 275 F. Supp. 2d 463, 474 (S.D.N.Y. 2003). Furthermore, "[a] plaintiff need not establish who, among a group of officers, directly participated in the attack and who failed to intervene." *Id.*; *see also Watts v. Laurent*, 774 F.2d 168, 179 (7th Cir. 1985) ("Federal common law principles of tort and damages govern recovery under section 1983. It is axiomatic that where several independent actors concurrently or consecutively produce a single, indivisible injury, each actor will be held jointly and severally liable for the entire injury.") (citation omitted).

The evidence before this Court showed that each Defendant personally took part in the assault. Johnson bears the greatest culpability of the remaining four Defendants because he was a sergeant in charge of the other corrections officers, led the other officers in the assault, and used a metal baton to strike Barnard. Jackson is the second-most culpable defendant because the evidence showed he caused the fracture of Barnard's rib. Finally, Davis and Whitehead must be held liable as well for their participation in the assaults.

(July 17, 2009 Am. Report and Recommendation 8-11.) The Magistrate Judge recommended an award of damages based on the following elements:

> The uncontroverted evidence established that Plaintiff's injuries to his rib and his head were caused by Defendants' unconstitutional use of excessive force in the sally port of the Jail on September 30, 2005. Plaintiff testified that his broken rib caused him substantial pain and discomfort for about two months after the beating. During this time he found it difficult to breathe, cough, sneeze, or sleep. Three months after the incident, Plaintiff sought medical attention for dizzy spells that occurred whenever he looked upward. None of Plaintiff's physical injuries appear permanent in nature.

(July 17, 2009 Am. Report and Recommendation 11.) The Court advised the parties that they could file objections to the Amended Report and Recommendation within ten (10) days of the date of entry thereof. The parties did not object to the Amended Report and Recommendation.

## II. STANDARD OF REVIEW

"The magistrate makes only a recommendation to this court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with this court." *Estrada v. Witkowski*, 816 F. Supp. 408, 410 (D.S.C. 1993) (*citing Mathews v. Weber*, 423 U.S. 261, 270-71 (1976)). This Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). "The filing of objections to a magistrate's report enables the district judge to focus attention on those issues-factual and legal-that are at the heart of the parties' dispute." *Thomas v. Arn*, 474 U.S. 140, 147 (1985). This Court may adopt without *de novo* review any portion of the magistrate judge's recommendation to which the parties do not raise a specific objection. *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 316 (4th Cir. 2005).

There being no objections, and upon review of the record, the Amended Report and Recommendation is ACCEPTED AND ADOPTED.

## III. DAMAGES

Because the Court has found that Defendants violated Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment, and Plaintiff presented credible evidence of excessive force and his resulting injuries, he is entitled to more than just nominal damages. *See Denny v. Hinton*, 900 F.2d 251, *available at* 1990 WL 34233 (4th Cir. Mar. 13, 1990) (No. 88-7211); *Wheatley v. Beetar*, 637 F.2d 863 (2d Cir. 1980) (remanding for new trial on damages and holding that trial court erred in instructing jury it could award plaintiff anywhere from $1.00 in nominal damages up to the full amount of his compensable injuries, where plaintiff established uncontroverted evidence of injuries).

The Court has reviewed damages awards in similar excessive force situations.[7] The Court will award $250.00 in compensatory damages each from Defendants Johnson, Jackson, Davis, and Whitehead. Moreover, in order to deter future violations, and to punish Defendants

---

[7] *See, e.g., Hudson*, 503 U.S. at 4, 12 (reversing decision of Fifth Circuit Court of Appeals that had vacated the magistrate's finding of prison guard's Eighth Amendment liability to inmate for unjustified assault that caused bruising and swelling, loose teeth, and a cracked dental plate, and reinstating magistrate judge's award of $800 in damages); *Romaine*, 140 F. Supp. 2d at 214 (awarding prisoner $1000 in compensatory damages and $500 in punitive damages against guard who struck him across the face three times); *Berberena v. Pesquino*, Civ. No. 03-557-CJP, 2007 WL 2778636 (S.D. Ill. Sept. 19, 2007) (finding jury award of $1.00 in nominal damages and $5000 in punitive damages neither inconsistent nor excessive, where defendant struck plaintiff with handcuffs after plaintiff was already subdued on the floor); *Card v. D.C. Dep't of Corr.*, No. 2:00cv631, E.D. Va. April 24, 2006 (Docket No. 103) (jury award against three defendants of $5000 for each of five occasions plaintiff was restrained in five-point restraints for forty-eight hours at a time); *see also Card*, 2005 WL 2260167 (E.D. Va. Sept. 13, 2005) (granting plaintiff's motion for summary judgment as to liability for excessive force, but preserving question of punitive damages for jury).

for egregiously violating Plaintiff's constitutional rights, the Court will award $3,000.00 in punitive damages against Johnson, $1,500.00 in punitive damages against Jackson, and $1,000.00 each in punitive damages against Davis and Whitehead. Additionally, the Court requests counsel for Plaintiff to submit a fee petition for an award of costs and attorney's fees, pursuant to 42 U.S.C. §§ 1988 and 1997e(d).

An appropriate Order will accompany this Memorandum Opinion.

Date: SEP - 3 2009
Richmond, Virginia

/s/
Richard L. Williams
United States District Judge